UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JOHNNY CALLOWAY, #272829, ) | Civil Action No.: 4:06-3356-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | **REPORT AND RECOMMENDATION** |
| ) | |
| ) | |
| SOUTH CAROLINA DEPARTMENT ) | |
| OF CORRECTIONS, LT. BIRD, SGT. ) | |
| WILLIAMS, CAPTAIN PRICE, OFFICER ) | |
| OUTLAW, SGT. OF TRANSPORTATION,) | |
| OFFICER GREY HOUSE, OFFICER ) | |
| PHILLIPS, FNU LT. W/M, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**I.     INTRODUCTION**

Plaintiff, proceeding pro se, is an inmate in the custody of the South Carolina Department of Corrections (SCDC), and is housed at Perry Correctional Institution (PCI). Plaintiff, along with four other inmates at PCI, originally filed suit in the Richland County Court of Common Pleas. Defendants removed the action to this Court and filed a Motion to Sever, which was granted on November 29, 2006. Plaintiff asserts claims for cruel and unusual punishment and deliberate indifference pursuant to 42 U.S.C. § 1983 as well as state law claims for gross negligence, gross negligence in supervision and retention, due process, conspiracy, retaliation and assault and battery.

Plaintiff filed a Motion to Strike and Motion for Summary Judgment (Document # 5) on December 22, 2006. Defendants filed a Response and Cross-Motion for Summary Judgment (Document # 6) on January 11, 2007. The undersigned issued an Order, filed January 12, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Motion for

Summary Judgment and the possible consequences if he failed to respond adequately. Plaintiff filed a Response (Document # 9) on February 13, 2007. Plaintiff filed an additional Response (Document # 19) to the Motion for Summary Judgment on February 28, 2007. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these are dispositive motions, this Report and Recommendation is entered for review by the district judge.

## II.  FACTUAL HISTORY

Plaintiff sets forth the following allegations in his Complaint:

At about 11:30 a.m. on 9/13/06, at Perry C.I.. Capt. Price (or Lt. Byrd) sprayed about four hundred grams of Top Cop mace in cell # 2 of i/m Johnny Calloway # 272829, the camera was on. The incident was witnessed by Lt. Byrd, Sgt. Williams, Capt. Price, Ofc. Outlaw, w/m Sgt. Of Transportation, Ofc. Greyhouse, Ofc. Phillips, and w/m Ct. The Top Cop gas is so strong and they had already planned to spray a lot of the gas in the small area that all of the officers had gas masks on, even the Capt. (On 9/14/06 Sgt. Williams threw away grievances). Calloway was placed in the shower for about twenty minutes with no clothes on. Then Calloway was outside, for some air as they said, outside in the rain with no clothes on, for about twenty minutes. The camera was still on. He was naked in front of another dorm and the two female nurses, demoralizing him. Also, a b/f Sgt. was in the control room watching the naked Calloway. Then he was placed back in the shower. Sgt. Williams turned the water on and adjusted it to as hot as it could get and told Calloway to get up under the water, Calloway did not. He was taken out of the shower area and placed in the restraint chair. Then placed in the chair for two four hour periods and per SCDC policy, Calloway was not acting in anyway or manner to warrent him being placed back in the chair for the second four hours. The two nurses came at about 12:00 p.m., one was old, the other young. Calloway asked them for a shower and was denied. Both nurses had gas masks on.
* * *
Gas burned Calloway skin, knoes running, pressure under eyes, bridge of knoes soar and hurt. When he breath in, he gets a sharp sensation. He had to breath lightly because every time he breaths in it burns severely. Vision in his left eye is blurry, he has welts on his arms, from excessively tight handcuffs.

Complaint at 2-3.

Lt. Byrd avers that Plaintiff summoned him to his cell and showed him a metal bar that Plaintiff had worked loose from his inner cell bar. Byrd Aff. at ¶¶ 2-3. Lt. Byrd then advised Associate Warden Claytor of the situation and assembled an extraction team in accordance with SCDC procedure. Byrd Aff. at ¶¶ 5-6. The extraction team approached Plaintiff's cell and Lt. Byrd and Captain Miller issued several directives to hand over the weapon. Byrd Aff. at ¶ 7; Outlaw Aff. at ¶ 5. When Plaintiff refused to relinquish the weapon, Lt. Byrd administered a three second burst of Top Kop MK-IX mace into his cell door. Byrd Aff. at ¶ 9; Outlaw Aff. at ¶ 6. It is standard SCDC policy to use Top Kop MK-IX mace to obtain compliance from a dangerous, non-compliant inmate. Byrd Aff. at ¶ 10; Outlaw Aff. at ¶ 7. Plaintiff had covered his door and his face with stuffing from his mattress. Byrd Aff. at ¶ 9; Outlaw Aff. at ¶ 6. Plaintiff also broke the sprinkler head in his cell, which dissipated the concentration of the chemicals. Byrd Aff. at ¶ 11; Outlaw Aff. at ¶ 8. Therefore, Lt. Byrd administered another three second burst of Top Kop MK-IX mace into Plaintiff's cell. Byrd Aff. at ¶ 12; Outlaw Aff. at ¶ 9. Lt. Byrd again directed Plaintiff to relinquish the metal bar, which he again refused to do. Byrd Aff. at ¶ 13; Outlaw Aff. at ¶ 10. At that time, Lt. Byrd reached into the food pass of Plaintiff's door and removed some of the mattress stuffing and another officer in the extraction team administered another burst of mace into Plaintiff's cell. Byrd Aff. at ¶¶ 13-14; Outlaw Aff. at ¶¶ 10-11. Approximately one or two minutes after the final burst of chemicals, Plaintiff relinquished the metal bar. Byrd Aff. at ¶ 15; Outlaw Aff. at ¶ 12.

At that time, Plaintiff was restrained with belly chains, handcuffs and leg restraints and taken to the showers for decomtamination. Byrd Aff. at ¶ 17; Outlaw Aff. at ¶ 14; Huggins Aff. at ¶ 5. Plaintiff's cell was also decontaminated and the officers who did so did not wear gas masks. Byrd Aff. at ¶ 28; Waters Aff. at ¶¶ 5-6; Outlaw Aff. at ¶ 26. Plaintiff was then taken outside briefly for

fresh air. Byrd Aff. at ¶ 18; Outlaw Aff. at ¶ 15. According to Lt. Byrd and Officer Outlaw, Plaintiff was not left outside in the rain for twenty minutes as alleged by Plaintiff. Byrd Aff. at ¶ 18; Outlaw Aff. at ¶ 15. When Plaintiff was taken back indoors, he was returned to his cell and placed in the restraint chair in accordance with SCDC policy. Byrd Aff. at ¶ 19; Outlaw Aff. at ¶ 17. The nurse on duty examined Plaintiff and found that Plaintiff was fitted properly in the restraints. Byrd Aff. at ¶ 20; Outlaw Aff. at ¶ 18; Neal Aff. at ¶ 4. Plaintiff did not indicate to the nurse on duty that he was experiencing any pain from the restraints or from his exposure to the mace. Neal Aff. at ¶ 4. The nurse on duty did not wear a gas mask. Byrd Aff. at ¶ 21; Outlaw Aff. at ¶ 19; Neal Aff. at ¶ 4.

Pursuant to SCDC policy, Plaintiff was removed from the restraint chair after four hours and was allowed to use the restroom, stretch, and eat. Byrd Aff. at ¶ 22; Outlaw Aff. at ¶ 20. The nurse on duty examined Plaintiff and saw no bruising, cuts or swelling on Plaintiff, nor did he complain of such symptoms. Neal Aff. at ¶ 5. Plaintiff Calloway complained that his eye was bothering him and the nurse instructed Plaintiff to flush his eye with water to relieve any irritation. Neal Aff. at ¶ 5. Plaintiff was then returned to the restraint chair for another four hour period. Byrd Aff. at ¶ 24; Outlaw Aff. at ¶ 22. The nurse on duty again examined Plaintiff and saw no bleeding or bruising from the restraints. Byrd Aff. at ¶ 25; Outlaw Aff. at ¶ 23. She also found that Plaintiff was fitted properly with the restraints. Byrd Aff. at ¶ 25; Outlaw Aff. at ¶ 23.

Plaintiff's medical records reveal that Plaintiff's heart and lungs were examined on November 21, 2006, by Dr. Alan Kantsiper and the findings were that his "heart and lungs are normal." See Plaintiff's Medical Records. The doctor concluded "no acute cardiopulmonary findings." Id.

Plaintiff attaches to his Response in opposition to Defendants' Motion for Summary Judgment, the affidavits of inmate Tony Jackson, inmate Christopher Owens, and inmate John Hammond. The affidavit of Tony Jackson sets forth events that occurred on November 8, 2006, that are unrelated to the claims asserted by Plaintiff in his Complaint. See Jackson Affidavit. Christopher Owens avers that on September 13, 2006, he saw Defendants come to Plaintiff's cell with gas masks and heard numerous bursts of the gas being sprayed. See Owens Affidavit. He saw Plaintiff walk past his door naked in restraints. Id. He heard Plaintiff complaining to Defendants and Nurses about the gas, putting him in a hot shower, and how tight the restraints were. Id. He also heard both Nurses tell him "you look fine to me." Id. Owens did not hear Plaintiff ask to be taken outside for air, but heard Defendants say "let's take him outside." Id.

John Hammond avers that on September 13, 2006, he saw Defendants go to Plaintiff's cell across from his with gas masks on and Lt. Byrd and Sgt. Williams took turns spraying the gas. See Hammond Affidavit #1. He also heard Plaintiff complaining about the water being too hot in the shower and not cold. Id. He heard the nurses say Plaintiff looks fine. Id. He never heard Plaintiff ask to go outside, but heard Defendants say "lets take him outside." Id.

Hammond submitted two additional affidavits that set forth events that occurred on November 8, 2006, that are unrelated to the allegations and claims set forth in Plaintiff's complaint. See Hammond Affidavit #s 2 and 3.

Plaintiff also attaches several exhibits to his Response, most of which are unrelated to his claims. However he does attach an Incident Report regarding the incident on September 13, 2006, written by Lt. Bird, and an Incident Report regarding the incident on September 13, 2006, written by an Officer Miller. Both of these Incident Reports are consistent with the Affidavits submitted by

Defendants.

### III.     PLAINTIFF'S MOTION TO STRIKE ANSWER AND ENTER DEFAULT

Plaintiff moves this Court to strike Defendants Answer and enter default "for the full relief." The basis for Plaintiff's Motion is not entirely clear. Plaintiff refers to Defendants' opposition to summary judgment, in which Defendants assert that summary judgment was not appropriate at the time because discovery had not been completed. According to Plaintiff, "this defense is frivolous, to this date, Defendants had served Plaintiff no discovery . . . sanctions is appropriate. Wherefore, this Court should strike the Defendants' answer and enter default for the full relief." Memorandum in Support of Motion to Strike at 1. A review of the record in this case does not indicate that any motion for summary judgment was filed by Plaintiff prior to this Motion to Strike.

Rule 12(f), Fed.R.Civ.P., provides,

> **Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Id. Plaintiff has not alleged that Defendants' Answer contains any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Thus, Plaintiff's motion to strike is without merit and should be denied.

### IV.     CROSS-MOTIONS FOR SUMMARY JUDGMENT

#### A.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function

-6-

is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the Court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

  **B.**  **Discussion**

    **1.**  **Allegations/Arguments of Parties**

Plaintiff alleges that he suffered cruel and unusual punishment and deliberate indifference

to serious medical needs when the mace was sprayed into his cell and he was subsequently put in the restraint chair for a total of eight hours. He further claims that he was denied access to SCDC's inmate grievance system because he attempted to file a grievance regarding the above events, but his grievance was thrown away. He asserts a cause of action pursuant to 42 U.S.C. § 1983 as well as state causes of action for gross negligence, gross negligence in supervision and retention, due process, conspiracy, retaliation and assault and battery.

Defendants filed a motion for summary judgment arguing that the complaint should be dismissed for Plaintiff's failure to properly exhaust his administrative remedies, that qualified immunity applies as to Plaintiff's claims of cruel and unusual punishment, deliberate indifference, and denial of access to the grievance system, that Plaintiff cannot establish that Defendants violated his rights to be free from cruel and unusual punishment or deliberate indifference, that Plaintiff has no constitutional right of access to the grievance system, and that Plaintiff's state law claims fail as a matter of law.

### 2.    Exhaustion of Administrative Remedies

Defendants assert Plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies. Defendants assert that Plaintiff alleges in his complaint that the incident took place on September 13, 2006, and Plaintiff along with four other plaintiffs filed this action in the Court of Common Pleas for Richland County on September 18, 2006. Thus, Plaintiff could not have exhausted his administrative remedies. Further, Defendants argue that even assuming Plaintiff did file a grievance as he asserted in his complaint, he could not have exhausted his remedies relating to the grievance, not to mention that there was no time for a response to the grievance before Plaintiff filed this action. Additionally, Defendants argue that Plaintiff has failed to allege he pursued

any other administrative remedy beyond the mere filing of a Step 1 grievance within PCI and that this failure to take any additional administrative grievance steps means that Plaintiff failed to properly exhaust his administrative remedies. Defendants submitted the grievance record via the SCDC's grievance coordinator which reveals no grievance related to this incident is reflected in Plaintiff's file. Further, Defendants submitted the affidavits of Sergeant Williams, Lt. Byrd, Sergeant Waters, and Lt. Outlaw who state they have never thrown away or discarded an inmate's grievance and that they did not do so in this case as Plaintiff alleged.

In the recent United States Supreme Court case, Woodford v. NGO, 126 S.Ct. 2378 (2006), the Court held that the PLRA exhaustion requirement requires proper exhaustion. Within the decision, the Court stated that administrative law requires proper exhaustion of administrative remedies which "'means using all steps that the agency holds out, and doing so properly.'" Id. at 2385 (citing Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Plaintiff claims that he filed a grievance, but that it was thrown away, and submits the affidavit of inmate John Hammond in support. Hammond stated that he watched Sergeant Williams take grievances from fellow inmate Bryan but that Sergeant Williams failed to put the grievances in the grievance box. See generally Hammond Affidavit. However, the affidavit fails to state when Hammond witnessed this occurrence, whether Plaintiff's grievance was included in those handed to Sergeant Williams or, even if it was, if the grievance was based on the facts alleged in this action. Thus, Hammond's affidavit fails to establish that Plaintiff actually filed or attempted to file a grievance regarding the issues raised in this action. Furthermore, Plaintiff filed this action within a few days of the alleged incident which means there was no time for a response to a grievance had he filed one. Additionally, assuming arguendo Plaintiff completed step one of the administrative

grievance process, it is undisputed that he failed to proceed to the necessary additional steps to exhaust his administrative remedies.[1] Accordingly, based on the evidence provided, Plaintiff has not exhausted all administrative remedies. Therefore, it is recommended that this action be dismissed for failure to exhaust administrative remedies.

### 3. State Law Claims

If the district judge accepts this Report and Recommendation, then the original federal jurisdiction claims will be dismissed. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over Plaintiff's state law causes of action.

## V. CONCLUSION

In light of the above analysis, it is recommended that Plaintiff's Motion to Strike Answer and for Summary Judgment (Document # 5) be denied, Defendants' Motion for Summary Judgment

---

[1] Even if Sergeant Williams did throw away the original grievance, Plaintiff made no effort to file the grievance with another officer or make any other attempts to comply with the administrative grievance procedure. See Jones v. Smith, 266 F.3d 399, 400 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility).

(Document # 6) be granted as to Plaintiff's federal claims, and Plaintiff's state law claims be remanded to the Richland County Court of Common Pleas.[2]

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 13, 2007
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[2] If the district judge accepts this recommendation, all remaining pending motions shall be rendered moot.